**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAVID RICE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 26-cv-01550-PX |
| CITY OF NEW CARROLLTON, *et al.*, | * | |
| Defendants. | * | |

***

**MEMORANDUM ORDER**

Pending in this wrongful termination and discrimination suit is Defendants City of New Carrollton, Phelecia E. Nembhard ("Nembhard"), and Cynthia Johnson ("Johnson") (collective, "Defendants")'s partial motion to dismiss or, in the alternative, for summary judgment, as to Plaintiff David Rice's claim for intentional infliction of emotional distress ("IIED"). ECF Nos. 14 & 17. For the following reasons, the motion is denied.

The Court construes the Amended Complaint facts as true and most favorably to Rice as the nonmovant. In 2005, Rice became Chief of the New Carrollton Police Department, where he served admirably for twenty years. ECF No. 14 ¶¶ 11–12. In July 2022, then-Mayor Nembhard and then-Director of Human Resources Johnson began what Rice views as a campaign of harassment aimed at removing him from office. *Id.* ¶¶ 11–12, 15–17. Rice at the time was recovering from open-heart surgery. *Id.* ¶ 16. Nembhard, supposedly inadvertently, called Rice's wife and could be heard saying she wished Rice "would just die already." *Id.* ¶¶ 18–21.

For the next year, Nembhard often stated to Rice, in front of his employees, that he "had to go" to make room for a Black police chief. *Id.* ¶¶ 27–28. During one meeting, Nembhard invited anyone who disagreed to "grow some balls" and "bring it on" by coming to her directly. *Id.* ¶¶ 36–39. On other occasions, Nembhard publicly—and falsely—accused Rice of theft of funds from the city and other related abuses of office. *Id.* ¶¶ 40, 44. Nembhard, as Mayor, also

demanded that Rice undergo unannounced inventory checks looking for stolen goods, *id.* ¶ 47, and three separate fitness tests, *id.* ¶¶ 50–61. Each time Rice passed the fitness test, Johnson insisted he undergo another, baselessly contending the test was performed improperly. *Id.*

On one occasion, after Rice, Johnson, and Nembhard got into a heated argument, Johnson filed a baseless peace order against Rice, which not only attracted unwanted media attention but also resulted in Rice's removal from the City Hall building where his office was. *Id.* ¶¶ 62–71. In Spring of 2023, Nembhard went on an "inadvertently" recorded "rant" in which she publicly derided Rice for doing nothing other than "tak[ing] food from public meetings." *Id.* ¶¶ 80–81, 92. Also, with mayoral elections around the corner, Nembhard burst into Rice's office, with Johnson and two police officers in tow, to pronounce him terminated "effective immediately." *Id.* ¶¶ 98–99. Rice was escorted out of the building. *Id.* ¶¶ 100–03. Nembhard next used the firing as a campaign platform, publicly distributing Rice's false termination letter to residents on Election Day as they headed to the polls. *Id.* ¶¶ 105–07, 111.

Nembhard ultimately lost the election, and Rice was reinstated as Chief. *Id.* ¶ 128. Even so, Nembhard continued to harass Rice and his family. On May 17, 2023, for example, the new Mayor invited Rice to City Hall. *Id.* ¶ 124. When Rice arrived, Nembhard screamed in his face and called the police to prevent him from entering the building. *Id.* ¶¶ 125–26. Rice was ultimately given access to the building, only to find his office had been ransacked, with plaques and pictures ripped off the walls and twenty years of records taken. *Id.* ¶ 122–23, 129–31. Nembhard also twice followed and filmed Rice and his family—including his young grandchildren—once in 2023 on the beach and once in 2024 at a retirement party, and then posted the videos on Facebook. *Id.* ¶¶ 117–18.

Over the many months of dealing with Nembhard and Johnson, Rice developed intense anxiety. *Id.* ¶ 108. When Rice was in Nembhard's presence, for example, "his heart would pound and his hands would start shaking uncontrollably." *Id.* ¶ 95. As a result, Rice was

diagnosed with post-traumatic stress disorder (PTSD), anxiety, and depression, which he continues to treat with medication. *Id.* ¶ 108.

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court must accept "the well-pled allegations of the complaint as true" and most favorably to the nonmovant. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). A claim survives dismissal only if averred facts "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). The Court will not credit naked legal conclusions devoid of factual support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The alternative requested relief of summary judgment implicates the Court's discretion under Federal Rule of Civil Procedure 12(d). *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462 (4th Cir. 2012). Pursuant to Rule 12(d), a court may convert a motion to dismiss to one for summary judgment under Rule 56 where the non-movant (1) is "given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment;" and (2) is "afforded a reasonable opportunity for discovery." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Notice is satisfied where "the movant expressly captions [his] motion 'in the alternative' as one for summary judgment and submits matters outside the pleadings for the court's consideration." *Hart v. Shearin*, Civil Action No. GLR-15-2056, 2016 WL 3459846, at *4 (D. Md. June 24, 2016) (citing *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005)). Where no formal discovery

has taken place, however, the Court should refrain from reaching summary judgment. *See Farabee v. Gardella*, 131 F.4th 185, 196 (4th Cir. 2025). Especially where, as here, Defendants do no more than cloak their dismissal motion as one for summary judgment. The court thus proceeds under the motion to dismiss standard.

To make plausible an IIED claim, some complaint facts must demonstrate that the defendant engaged in (1) intentional or reckless conduct that is (2) extreme and outrageous and which (3) caused severe emotional distress. *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000). Importantly, this tort "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat. Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992). The averred emotional response must be "severely disabling" such that "no reasonable man could be expected to endure it." *Thacker v. City of Hyattsville*, 762 A.2d 172, 315 (Md. Ct. Spec. App. 2000) (emphasis omitted) (quoting *Harris v. Jones*, 281 Md. 560, 566 (1977)). This standard sets a high bar. *See B.N.S. ex rel. Stuart v. Brito*, Civil Case No. ELH-17-2670, 2018 WL 5830565, at *10 (D. Md. Nov. 6, 2018). "[C]onclusory statements of emotional distress" without demonstrably severe injury are often rejected as insufficient for an IIED claim. *Karn v. PTS of Am., LLC*, Civil Action No. GJH-16-3261, 2017 WL 4162251, at *5 (D. Md. Sept. 19, 2017).

Defendants first contend that Rice fails to plead sufficiently outrageous conduct. ECF No. 17-1 at 5. True, "workplace harassment . . . almost never rises to the level of outrageousness . . . ." *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002). However, the Amended Complaint, viewed most favorably to Rice, goes further. Nembhard, with Johnson often at her side, repeatedly screamed at Rice in front of colleagues about baseless accusations of theft and official misconduct; abruptly fired him and then handed out to the electorate Rice's fabricated termination letter in a misguided attempt to get reelected as Mayor; barred Rice from the City Hall building; targeted his family; and expressed to Rice's wife a

wish that he would "just die" days after his open-heart surgery. *See* ECF No. 14 ¶¶ 18–21, 40–45, 105–07, 117–18, 124–26. At the pleading stage, Defendants' protracted, maniacal targeting of Rice is sufficiently outrageous for the claim to proceed.

Defendants also argue that the alleged emotional injury is not sufficiently extraordinary to sustain the claim. ECF No. 17-1 at 5. Again, at the pleading stage, the Court disagrees. Rice describes repeatedly experiencing somatic symptoms consistent with severe anxiety when in Nembhard's presence, to include racing heart, shaking limbs, and shortness of breath. ECF No. 14 ¶¶ 108, 228. Adding to this Rice's recent open-heart surgery—of which Defendants were acutely aware—makes Defendants' callous persistence even more concerning. *Id.* ¶ 16. As a result, Rice now suffers from PTSD for which he receives treatment and medication. *Id.* ¶ 228. This is sufficient to make the claim plausible. *See Reagan v. Rider*, 521 A.2d 1246, 1251 (Md. Ct. Spec. App. 1987); *cf. Walters v. Cheesecake Factory Restaurant, Inc.*, 763 F. Supp. 3d 716, 722–23 (D. Md. 2025) (holding that bare allegation of PTSD without more were insufficient to make plausible the claim).

Accordingly, for the above-stated reasons, and on this 29th day of October, 2026, the United States District Court for the District of Maryland, **ORDERS** that:

1. The Motion to Dismiss filed by Defendants City of New Carrollton, Phelecia E. Nembhard, and Cynthia Johnson (collectively, "Defendants"), ECF No. 17, is **DENIED**;
2. Within fourteen (14) days from the date of this Order, Defendants **SHALL** answer the Amended Complaint;
3. The Clerk is directed to **TRANSMIT** copies of the foregoing Memorandum Order to the parties.

10/29/2026
Date

/s/
PAULA XINIS
United States District Judge